**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Westbrook,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Quality Loan Service Corporation, et al.,<br><br>　　　　　Defendants. | No. CV-25-01061-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Plaintiff's "emergency motion to stay foreclosure sale and remove notice." (Doc. 12.) For the reasons that follow, the motion is denied.

**RELEVANT BACKGROUND**

On April 1, 2025, Plaintiff, who is proceeding *pro se*, initiated this action by filing the complaint. (Doc. 1.) The complaint is largely incomprehensible—it is entitled "Stop Sale; FDCPA Violation and Rule 65; Arizona Rules of Civil Procedure to Stop Sale; With Injunctive Reliefs" and alleges very few, if any, facts. (*Id.*) Instead, the complaint and attached materials include a confusing jumble of citations to statutes and cases as well as allusions to sovereign citizen principles. (*See, e.g.,* Doc. 1 at 7 ["Any or all documents tendered to me, lacking bona fide wet ink signatures or dates per title 18 U.S.C.A. § 513-514 are counterfeit security instruments causing you to be liable in your corporate and individual capacity by fraudulent conveyance now and forevermore. If and when you cause injury and/or damages to this Natural Man Secured Party . . . you agree to voluntarily . . . surrender . . . any and all bonds, public and/or corporate insurance policies, and CAFR

funds as needed to satisfy any and all claims as filed against you by this Natural Man Secured Party."]; Doc. 1-3 at 1-8 [purported "CONTRACT IN ADMIRALTY JURISDICTION" that Plaintiff caused to be recorded by the Maricopa County Recorder in March 2024, which refers to Plaintiff as a "Vessel in Commerce"].) Buried within the attachments to the complaint is a March 18, 2025 letter to Plaintiff disclosing that a foreclosure sale of Plaintiff's residence at 1893 E Gemini Place in Chandler, Arizona has been scheduled for June 17, 2025. (Doc. 1-3 at 54.)

This is not the first time Plaintiff has filed a lawsuit in an attempt to stave off foreclosure of that residence. On March 13, 2023, Plaintiff filed an action against an array of defendants, including Quality Loan Service Corporation ("Quality Loan") and Select Portfolio Servicing Inc. ("SPS")—the same two Defendants named in this action—in Maricopa County Superior Court. That action was assigned the case number CV2023-091163. On October 18, 2023, the judge in that action issued an order dismissing Plaintiff's claims against Quality Loan and SPS. *See* https://courtminutes.clerkofcourt.maricopa.gov/viewerME.asp?fn=Civil/102023/m10622821.pdf. Among other things, the dismissal order provides the following background details:

> This case involves a dispute regarding real property located at 1893 East Gemini Place, Chandler, Arizona. The property was purchased by Plaintiff Michael Westbrook on February 8, 2018. There was an initial purchase money loan of $663,000.00 from Caliber Home Loans, Inc. secured by a deed of trust on the property. The loan was subsequently reassigned to other entities. On March 7, 2022, the deed of trust was released by the then servicer or holder of the loan and deed of trust. On April 18, 2022, a Recission of the release was recorded. On August 29, 2022, a Notice of Trustee Sale was recorded. Thereafter, Plaintiff filed suit in Maricopa County Superior Court under CV2022-094017. The case was removed to U.S. District Court but summarily dismissed. Plaintiff then conveyed title to a trust owned by himself. Plaintiff then filed an action in U.S. Bankruptcy Court. At oral argument the Bankruptcy Court asked for additional briefing on why the case should not be dismissed with prejudice but Plaintiff withdrew his Adversary Complaint before the Bankruptcy Court ruled on the pending motions to dismiss.

> On March 13, 2023, Plaintiff then filed this action in Maricopa County Superior Court which was also removed to U.S. District Court. The case was then remanded on Plaintiff's motion. The case was assigned to this division. Concurrently, Plaintiff has filed another Adversary Complaint in U.S. Bankruptcy Court against the same defendants named herein and alleging the same claims being pursued in U.S. Bankruptcy Court.

(*Id.*) The court dismissed Plaintiff's claims against Quality Loan and SPS without leave to amend for several reasons, including that "Plaintiff's Complaint does not comply with Rule 8, Arizona Rules of Civil Procedure which requires a short and plain statement of the claims showing that the pleader is entitled to relief" and that "[t]his case has been the subject of extensive pleading and motion practice in multiple previous lawsuits and one parallel lawsuit in U.S. Bankruptcy Court. At this stage in the actions based upon the same set of operative facts in at least three different courts, dismissal is not premised upon a mere defect of pleading which might be cured by amendment." (*Id.*)

Turning back to this action, although Plaintiff filed the complaint on April 1, 2025, he did not purport to file proof of service until May 1, 2025. (Doc. 6.) As explained in a recent order, the purported proof of service is invalid as to Quality Loan and does not even mention SPS. (Doc. 11.) As a result, neither Defendant has been properly served.

These details provide the backdrop for the most recent developments in this case. On June 11, 2025, Plaintiff filed a pair of motions. The first is an "emergency motion to stay foreclosure sale and remove notice." (Doc. 12.) The motion seeks a temporary restraining order ("TRO") barring Defendants from proceeding with the foreclosure sale of Plaintiff's residence scheduled for June 17, 2025. According to Plaintiff, the foreclosure sale would violate A.R.S. § 33-707 and/or A.R.S § 33-714 because "the loan obligation secured by the Property has been satisfied in full, as evidenced by a recorded Deed of Reconveyance dated February 20, 2025, and recorded on March 1, 2025." (*Id.* at 3.)

The other motion is an "emergency motion for expedited consideration" in which Plaintiff argues that Defendants should be given a 24-hour deadline to respond to his request for a TRO and that the Court should hold a hearing, preferably via Zoom, before

the scheduled June 17, 2025 foreclosure date.  (Doc. 13.)  Plaintiff also indicates that he provided notice to Defendants of his request for a TRO when he "contacted Defendants' representatives by phone, and USPS certified mail and informed them of Plaintiff's intent to file this Emergency Motion and the relief sought.  Defendants have been provided with copies of this Motion and all supporting documentation."  (*Id.* at 5 ¶¶ 28-30.)

## DISCUSSION

I.  Legal Standard

Requests for TROs and preliminary injunctions are governed by the same substantive standard.  *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  More specifically, each type of "injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (cleaned up).  *See also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.") (citation omitted).

"A plaintiff seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  However, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (cleaned up).  *See also Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024) ("Serious questions are issues that cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation.  Thus, parties do not show serious questions when they raise a merely plausible claim, nor can a district court forgo legal analysis just because it has not identified precedent that places the

question beyond debate. This 'less demanding' merits standard requires serious factual questions that need to be resolved in the case.") (cleaned up).

Regardless of which standard applies, the movant "carries the burden of proof on each element of either test." *Env't. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

II. Analysis

An initial problem with Plaintiff's TRO request is procedural. It would be impermissible to issue a no-notice TRO under these circumstances. A prerequisite to a no-notice TRO under Rule 65(b)(1)(A) is a sworn statement by the movant "clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Plaintiff has not provided such a sworn statement—to the contrary, he proposes that Defendants be allowed to respond before the issuance of any relief.

This means that, under Rule 65, Plaintiff may only obtain a TRO with notice to Defendants. Although it is sometimes possible to complete the with-notice TRO process under the sort of abbreviated timeframe that Plaintiff requests, *see Cupples v. Catholic Charities Community Services Inc.*, 2022 WL 16640683 (D. Ariz. 2022), the provision of notice poses a practical problem here. Although Plaintiff asserts that he has provided notice to Defendants of his request for emergency relief (Doc. 13 at 5 ¶¶ 28-30), the Court lacks sufficient information to determine whether that notice was meaningful or effective. It appears that Plaintiff simply mailed his motion papers to an address that, according to Plaintiff, is associated with each Defendant. (Doc. 12 at 6.) But the Court has no way of knowing whether those are Defendants' correct addresses, given that Plaintiff has not yet properly served either Defendant with process in the two-plus months since he filed this action (and, thus, neither Defendant has appeared or provided any contact information). Also, even if the mailing addresses identified by Plaintiff are correct, it is unclear whether a mailing sent to those addresses would get processed and routed to each Defendant's attorney in time to prepare and file a response. Plaintiff claims to have mailed his motion

papers on either June 9 or 11, 2025,[1] yet he proposes that Defendants only be allotted 24 hours from when he filed his emergency motions—*i.e.*, until June 12, 2025—to file a response. It is unclear whether Plaintiff's mailings will even arrive by that deadline. Finally, because Plaintiff does not identify the unspecified "representatives" with whom he contends he spoke on the phone on June 9, 2025 (Doc. 13 at 5 ¶ 29), the Court cannot determine whether those phone calls have provided meaningful notice to Defendants.

The Court acknowledges that, when it comes to a TRO, "informal notice and a hastily arranged hearing are to be preferred to no notice or hearing at all." *Granny Goose Foods, Inc. v. B'hood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 433 n.7 (1974). Even still, the Court does not see a practical way to ensure that Defendants receive adequate notice under the circumstances at issue here.

The late timing of Plaintiff's motion also undermines his request for a different threshold reason. Since at least late March 2025, Plaintiff has been aware that a foreclosure sale is scheduled for June 17, 2025. (Doc. 1-3 at 54.) Additionally, the document on which Plaintiff now relies as his emergency basis for opposing the foreclosure sale—the deed of reconveyance—is not a new document, as it was recorded on April 1, 2025. (Doc. 5.) Nevertheless, Plaintiff waited until June 11, 2017, only four business days before the foreclosure sale, to file his motion for emergency relief. As the Ninth Circuit has explained, "[a] delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief. A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action." *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (citation omitted). "We would be loath to withhold relief solely on that ground, but we do give that fact consideration in measuring

---

[1] Plaintiff asserts that "on 06/09/2025 Plaintiff contacted Defendants' representatives by phone, and USPS certified mail and informed them of Plaintiff's intent to file this Emergency Motion and the relief sought." (Doc. 13 at 5 ¶ 29.) However, Plaintiff did not sign and file his motion for emergency injunctive relief until June 11, 2025, and the attached proof of service states that it was mailed to Defendants that same day via certified mail. (Doc. 12 at 6.) It is therefore unclear whether there were two mailings or one, and if there were two, what document was included in the first mailing.

the claim of urgency." *Id.*

Finally, even putting aside these considerations, Plaintiff's TRO request fails on the merits under the first *Winter* factor. The incomprehensible nature of the complaint, alone, undermines any likelihood of success on the merits. *See, e.g., Toepfer v. City of Vallejo*, 2024 WL 4437216, *6 (E.D. Cal. 2024) ("Plaintiffs have not demonstrated that they are likely to succeed on the merits of their claims because the Complaint fails to sufficiently plead any claims. . . . Although pro se pleadings are liberally construed, they are still required to conform to the Federal Rules of Civil Procedure."); *Ibrahim Hussain v. Stadelman*, 2022 WL 17542933, *3 (M.D. Fla. 2022) (affirming denial of TRO request where "the Complaint . . . is an incomprehensible shotgun pleading and is due to be dismissed" because "those claims cannot establish a likelihood of success on the merits"). Furthermore, although Plaintiff contends in his motion papers that the existence of a "recorded Deed of Reconveyance" shows that any foreclosure effort would be unlawful under A.R.S. §§ 33-707 and 33-714, Plaintiff's complaint does not assert any claim premised on those statutes or on the existence of a recorded deed of reconveyance. Thus, there is not a "sufficient nexus between the claims raised in [the] motion for injunctive relief and the claims set forth in the underlying complaint itself," which means the Court "lacks authority to grant the relief requested." *Pac. Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015). *See also id.* at 633 ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction.").

Because Plaintiff has failed to meet his burden under the first *Winter* factor, it is unnecessary to consider the remaining factors. *Roe v. Critchfield*, __ F.4th __, 2025 WL 1486985, *4 (9th Cir. 2025) ("Likelihood of success on the merits is the most important *Winter* factor and is a threshold inquiry. In the absence of serious questions going to the merits, the court need not consider the other factors.") (cleaned up).

…

…

- 7 -

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's "emergency motion to stay foreclosure sale and remove notice" (Doc. 12) is **denied**.

2. Plaintiff's "emergency motion for expedited consideration" (Doc. 13) is **granted** insofar as this order resolved his other motion on an expedited basis.

Dated this 13th day of June, 2025.

Dominic W. Lanza
United States District Judge